IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

**RICKIE REED v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. P-28123     Bernie Weinman, Judge**

**No. W2004-01878-CCA-R3-PC  - Filed June 17, 2005**

The petitioner, Rickie Reed, appeals from the trial court's denial of post-conviction relief. The single issue presented for review is whether the petitioner was denied the effective assistance of counsel at trial. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

C. Anne Tipton, Memphis, Tennessee, for the appellant, Rickie Reed.

Paul G. Summers, Attorney General & Reporter; Michael Markham, Assistant Attorney General; and Emily Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 18, 2001, the petitioner was convicted of second degree murder and attempted second degree murder. The trial court imposed consecutive sentences of twenty-three and twelve years respectively. This court affirmed on direct appeal. State v. Rickie Reed, No. W2001-02076-CCA-R3-CD (Tenn. Crim. App., at Jackson, Oct. 31, 2002). On March 17, 2003, our supreme court denied application for permission to appeal.

On February 4, 2004, the petitioner filed a petition for post-conviction relief alleging, among other things, that he had been denied the effective assistance of counsel. Counsel was appointed and thereafter the petition was amended wherein it was specifically alleged that trial counsel had failed to present all possible issues on appeal, particularly the issue of whether the verdicts of attempted second degree murder and reckless aggravated assault, the latter of which was merged into the former, were inconsistent because of differing levels of criminal intent, knowing and reckless.

The petitioner was convicted as the result of two separate shootings between rival gangs occurring on July 25, 1999. In the first incident, the Memphis residence of Kathy Branch on Marble Street was engulfed by gunfire. As she ran through her house, which was also occupied by two of her children who were asleep in a bedroom, she was shot five times. Later, when Fredrick Branch learned that his aunt, Kathy Branch, had been shot, he armed himself and joined several other armed men who drove in a blue Chevrolet Cavalier to Ms. Branch's residence. After Ms. Branch was placed into an ambulance, the men drove down Merchant Street until they saw a blue Lincoln which appeared to be waiting in a driveway. When a Nissan with tinted windows approached them from behind, several shots were exchanged. Gunfire from the Nissan struck the car in which Fredrick Branch was riding before his companions were able to get away. He was shot during the exchange and had died by the time police arrived.

During the ensuing investigation, the petitioner admitted to police that he shot at the Kathy Branch house and he also acknowledged that later, when he was in the Nissan, he fired shots at the blue Chevrolet Cavalier, whose passengers were involved in an altercation with the passengers of the blue Lincoln. The petitioner estimated that he fired ten shots at the vehicle occupied by Fredrick Branch. While acknowledging that he was a member of the Gangster Disciples and aware that the occupants of the Chevrolet were members of the Vice Lords, he told police that he did not know the occupants of the residence on Marble Street or the occupants of the blue Chevrolet. An autopsy performed on Frederick Branch indicated that he had suffered a series of injuries, most likely from one shot in the back. The petitioner admitted using an SKS, a high powered assault-type weapon. There was evidence that Deon Vance, who was with the petitioner in the Nissan, also fired shots. In the direct appeal, this court concluded that the evidence was sufficient to support the second degree murder conviction under the theory of criminal responsibility for the conduct of another. Reed, slip op. at 7; see also Tenn. Code Ann. § 39-11-402 (defining criminal responsibility).

At the evidentiary hearing, the petitioner testified that he had received a copy of the discovery material from his trial counsel prior to trial and had had ample opportunity to discuss the facts and the circumstances of the case during the several visits his counsel made to the jail. He did, however, complain that his counsel failed to employ an investigator and failed to interview or present as witnesses "a couple of guys who [were] there that night." The petitioner, who confessed to his involvement in the two shootings, also criticized his trial counsel for failing to ask for any ballistics testing. He explained that it was his counsel's understanding that the TBI believed that the fragments were insufficient for testing. The petitioner testified that after the trial, he learned in prison from his co-defendant, Deon Vance, that the TBI ultimately determined that the bullet was consistent with the weapon that the petitioner had used.

The petitioner testified that he actually received an offer from the state to enter a plea with a term of as little as ten years, which he agreed to accept, but that for some reason the offer was withdrawn. He recalled that the state then made an offer of fifteen years, which he refused. The petitioner explained that had he known that ballistics testing would have connected his weapon to the fatal shot, he would have accepted the fifteen-year offer.

Trial counsel testified that he worked in conjunction with the attorney appointed to represent co-defendant Vance. He stated that he did receive discovery materials from the state, which had an open file policy, and that these materials were provided to the petitioner. Trial counsel confirmed that he had discussed the case with the petitioner on several occasions both at the jail and at various court appearances. It was his opinion that he did not need the assistance of an investigator and he acknowledged that he did not request one during the course of his representation. Trial counsel stated that he had a transcript of the preliminary hearing testimony of Kathy Branch and a copy of the statement that she had provided to the police. It was his belief that an interview, under those circumstances, would not have been of further benefit. He also stated that he had the statements of Antropolez Burchett and Quentius Nesbitt, occupants of the vehicle in which Fredrick Branch was riding and witnesses for the state at trial. Trial counsel explained that because the petitioner had acknowledged his participation in the shooting, his defense was to establish that it was a reckless act and not a knowing killing, characterizing it as part of a "rolling gun battle" between the occupants of the three vehicles.

Trial counsel interviewed the medical examiner who thought that it would not be possible to match the bullet to the gun or to identify the caliber of the weapon that fired the bullet. Trial counsel explained that he did not want to request ballistics testing because he believed the absence of proof aided his theory. Trial counsel also testified that while he raised several issues in the motion for a new trial, including the issue of inconsistent verdicts on attempted second degree murder and reckless aggravated assault, it was his opinion that there was no likelihood of success on those issues as grounds for relief on appeal.

At the conclusion of the evidentiary hearing, the trial court found as follows: (1) That the petitioner provided his trial counsel only with the street names of several witnesses, that none were helpful to the defense, and that otherwise trial counsel had access to the testimony of all of the state witnesses he chose not to interview prior to trial; (2) that trial counsel chose not to request ballistics testing because the state had determined that the fragments were too small to test and because he thought it would be contrary to the defense theory of lack of intent; (3) that no ballistics tests were ever done that linked the fragments to any particular weapon, including that utilized by the petitioner in the crimes, and that there were several other weapons used in each of the two incidents; (4) that while the state offered the petitioner a fifteen-year sentence prior to trial, the petitioner refused the offer even though he was fully aware that he could be convicted under the theory of criminal responsibility; (5) that trial counsel was not ineffective for failing to present inconsistent verdicts as a ground for relief on appeal because the issue would have had no merit on appeal; and (6) that the defense theory that there were several high powered weapons involved in each of the two incidents was a reasonable theory.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App.

1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

In Black v. State, 794 S.W.2d 752 (Tenn. Crim. App. 1990), this court enumerated the standard for establishing prejudice by counsel's failure to subpoena witnesses. To establish prejudice, the petitioner must: "(1) produce the witness at his post-conviction hearing; (2) show that through reasonable investigation, trial counsel could have located the witness; and (3) elicit both

-4-

favorable and material testimony from the witness." Denton v. State, 945 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996) (citing Black, 794 S.W.2d at 757). This standard requires a petitioner to produce the uncalled witness at the post-conviction proceeding so that the court need not speculate as to the materiality of the testimony or credibility of the missing witness. Black, 794 S.W.2d at 758.

In this appeal, the petitioner insists that his trial counsel failed to adequately investigate and was deficient in his performance for failing to employ an investigator. He points out that the duty of defense counsel is to do more than discover the evidence gathered by the state and that a proper investigation would have included an attempt to interview the surviving victim, Kathy Branch. In support of his argument the petitioner makes reference to the American Bar Association Standards for Criminal Justice as approved by our supreme court in State v. White, 114 S.W.3d 469, 478 (Tenn. 2003):

> "[T]he basic duty defense counsel owes to the administration of justice and as an officer of the court is to serve as the accused's counselor and advocate with courage and devotion and to render effective, quality representation." See ABA Standards for Criminal Justice 4-1.2(b) (3d ed.1993). This duty requires defense counsel to exert every reasonable effort to protect the client's interests, both in the investigation and the trial of a case, by interviewing the client; apprising the client of his or her rights; conducting a thorough legal and factual investigation of the case; attempting to obtain information in the possession of the prosecution and law enforcement authorities; filing appropriate motions for the suppression of the evidence; raising all available claims, issues and defenses; conducting effective cross-examination of the State's witnesses; and attempting to mitigate punishment if the client is convicted.

The petitioner also complains that trial counsel should have determined independently whether ballistics testing could have been performed on the bullet fragments removed from the deceased victim. The petitioner insists that trial counsel failed in his responsibilities by relying upon the TBI report rather than securing an independent ballistics analysis. The petitioner maintains that there was prejudice because he would have accepted a plea bargain offer had he known that the bullet fragments which killed the victim were likely fired from his weapon.

Initially, defense counsel does have a duty to investigate. The problem in this instance is that the petitioner has not established any prejudice by any deficiencies on the part of trial counsel regarding the investigation. Even if trial counsel had failed to adequately interview any of the potential witnesses, including the victim Kathy Branch, there is no indication from the proof introduced at the evidentiary hearing how this might have affected the trial in any way. Further, the petitioner was unable to produce any of the witnesses at the evidentiary hearing that he believed trial counsel should have produced at the trial. It is his responsibility to do so; otherwise, he is not entitled to relief. See Black, 794 S.W.2d at 757.

As to the final issue, the state went to trial without being able to prove that the petitioner's weapon fired the shot that killed Fredrick Branch. That evidence was favorable to the defense at the

time of the trial. Trial counsel was faced with the choice of going to trial with that advantage or insisting upon further testing. The state's theory of guilt was criminal responsibility for the actions of another. Several individuals fired shots at the vehicle in which the victim was a passenger. While testing subsequent to trial may have established that the bullet fragments were consistent with the weapon utilized by the petitioner, a fact that would have further incriminated the petitioner, it is our view that trial counsel cannot be subjected to the standard of second-guess.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE